UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

DORRIS READING TIEMAN,

    Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

    Defendant.

Case No. 1:15-CV-155

**OPINION AND ORDER**

Plaintiff Dorris Reading Tieman seeks judicial review of the Social Security Administration's decision to deny his Disability Insurance and Social Security Income benefits. She asks this Court reverse the agency's decision or, alternatively, remand the case for reconsideration.

For the reasons discussed below, the Administration's decision is remanded.

**A.    Overview of the Case**

Plaintiff claims she became disabled on November 3, 2011, but the Administrative Law Judge ("ALJ") denied Plaintiff's application for benefits. While the ALJ agrees that Plaintiffs chronic obstructive pulmonary disease (COPD), obesity, major depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and cannabis abuse constitute severe impairments, she found that it does not meet or equal any listing found in the federal regulations. Moreover, the ALJ found that Plaintiff is able to perform a significant number of jobs that exist in the national economy. The ALJ's decision became the final decision of the Commissioner

when the Social Security Appeals Council denied Plaintiff's request to review it.

The Court addresses the other relevant facts in its analysis below.

**B.     Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**C.     Disability Standard**

To qualify for disability benefits, the claimant must establish that he suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.     Analysis**

On appeal, Plaintiff argues the ALJ's decision was patently wrong in three aspects: first, the ALJ improperly overemphasized Plaintiff's daily activities; second, the ALJ improperly used boilerplate language; and third, ALJ improperly analyzed the mental health evidence.

**(1) *The ALJ improperly analyzed Plaintiff's mental health evidence***

In analyzing Plaintiff's mental illness, the ALJ erred in two aspects. First, the ALJ improperly "played doctor." Second, the ALJ failed to discuss all the relevant medical evidence on the record and cherry-picked the facts.

ALJ credibility determinations are entitled to deference because the ALJ is "in a special position to hear, see, and assess witness*.*" *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). Courts only overturn a credibility determination if it lacks any explanation or support. *Id*. at 816. A credibility determination will be upheld as long as it is explained in a way that allows the court to determine that the ALJ logically based it on specific findings and record evidence. *Id*. As a

result, the ALJ need only "minimally articulate" the reasons for credibility judgments. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).

The Seventh Circuit has cautioned ALJ's not to succumb to the temptation to play doctor. *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2012). The ALJs are said to have impermissibly played doctor when they either reject a doctor's medical conclusion without other evidence, or when they draw medical conclusions themselves about a claimant without relying on medical evidence. *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

In concluding Plaintiff's mental impairments only moderately limited her ability to maintain employment, the ALJ substituted her own judgment for the opinion of medical experts several times. The ALJ discounted the severity of Plaintiff's mental impairments on the basis of her own opinion that Plaintiff "was experiencing increased situational stress from caring for her mother that was impacting her in a manner that would be difficult to handle for persons who did not even have a mental illness." (R. at 28.) Additionally, the ALJ attributed any decline in Plaintiff's mental health records to the "great stress from her mother's illness and then the deaths in her family." (R. at 28.) Further, the ALJ made statements about the possibility that certain drugs had long term negative side effects, and suggested how certain scenarios "will help minimize her stress" without citing to any medical evidence or expert opinion supporting these hypotheses. (R. at 26--28.) In doing so, the ALJ indulged in her own opinion about depression, rather than relying on the objective medical evidence to support her conclusion.

Next, the ALJ improperly weighed Plaintiff's mental health evidence because she cherry-picked the evidence that supported her finding regarding Plaintiff's mental impairments. While "[a]n ALJ has the obligation to consider all relevant medical evidence," this does not mean they can "simply cherry-pick facts that support a finding of non-disability while ignoring evidence

4

that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Although, the ALJs are not required to give any weight to individual GAF scores, they must build a logical bridge from the evidence to the conclusion. *Id.*; *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).

The ALJ assigned "little weight to the GAF assessments throughout the rest of the record," because the scores reflected a time when Plaintiff was under situational stress from her mother's illness or the deaths of family members. (R. at 28.) However, the ALJ mentioned twice how the most recent records "indicate some improvement in her functioning with her global assessment of functioning being 55," and that Plaintiff's GAF of 55 in September 2014 indicated "no more than moderate difficulty with maintaining overall functioning." (R. 23, 27.) Without a proper explanation that is based on medical evidence, an ALJ cannot decline to use a series of low GAF scores to support a finding of not disabled, while also using one high GAF score as evidence to support her final determination.

Additionally, the ALJ used Plaintiff's GAF scores to assign different weight to different medical experts. She assigned great weight to State Agency psychologist, Dr. Kennedy, because he concluded Plaintiff had "moderate limitations in social functioning, concentration, persistence, or pace." (R. at 28.) However, the ALJ assigned no weight to the consultative psychological expert because this expert assigned the Plaintiff a GAF score of 40. (R. 28.) Other than the low GAF score assigned by the consultative psychological examiner, the ALJ failed to explain why Dr. Kennedy's findings should be awarded great weight. An ALJ cannot use a low GAF as a reason for discounting a psychologist's opinion, while also assigning GAF assessments little weight throughout the rest of the record.

Finally, the ALJ emphasized Plaintiff's lack of medical treatment to support her

5

determination that Plaintiff's mental illness was not severe, while failing to consider Plaintiff's reasons for not obtaining medical treatment. An ALJ "must not draw any inferences about an individuals symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanations that the individual may provide." SSR 96-7p. In discounting the severity of Plaintiff's mental illness, the ALJ discussed how Plaintiff "did not seek out mental health counseling until January 2013 when her mother's increasing health problems were more stressful," (R. at 23.) Additionally, she discussed how Plaintiff "has not been hospitalized for psychiatric care since the alleged onset date, and she has not participated in intensive outpatient treatment programs." (R. at 24.) However, the ALJ failed to consider how Plaintiff testified several times on the record that she could not afford to continue certain treatment, medication, or specialists. (Tr. at 97−98.) In fact, the ALJ omitted any mention of Plaintiff's lack of medical insurance in her opinion.

In determining Plaintiff's mental impairments were not severe, the ALJ not only impermissibly played doctor, but also cherry-picked the evidence to support her decision. As a result, Plaintiff has shown patent error. For these reasons, the Court remands the Commissioner's decision.

As for Plaintiff's contentions that the ALJ overemphasized her daily activities and improperly used the boilerplate language, given that Plaintiff's case will be re-evaluated by the Commissioner, no findings pertaining to these contentions are necessary at this time. The standards are well established as to both issues, and additional directives are not necessary on remand.

SO ORDERED on June 24, 2016.

  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE